UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORILLARD TOBACCO COMPANY,
    a Delaware corporation,

        Plaintiff,

v.                                                    Case No.: 10-13985
                                                    Hon. Julian Abele Cook, Jr.

ZOOM ENTERPRISES, INC., a Michigan corporation
SPEEDY ENTERPRISE CORPORATION d/b/a
ZOOM IN ZOOM OUT, a Michigan corporation,
ALOU FUELS, INC., a Michigan corporation, and
ALOU INVESTMENT, INC., a Michigan corporation,

        Defendants.

## ORDER
(Amending Clerical Errors)

This is a lawsuit (filed on October 6, 2010) in which the Plaintiff, Lorillard Tobacco Company ("Lorillard"), seeks to obtain damages and injunctive relief against the Defendants (Zoom Enterprises, Inc., Speedy Enterprise Corporation, Alou Investment, Inc., and Alou Fuel, Inc.) (collectively, "the Defendants") for their acts of (1) trademark counterfeiting and infringement, in violation of 15 U.S.C. § 1114(1), (2) unfair competition, false designation of origin, and misleading representations, in violation of 15 U.S.C. § 1125(a), (3) trademark dilution under 15 U.S.C. 1125(c), (4) unfair competition under the common law of the state of Michigan, (5) statutory unfair competition pursuant to Mich. Comp. Laws § 429.42, and (6) violations of the Michigan Consumer Protection Act, as identified by Mich. Comp. Laws § 445.903.  These allegations were denied by the Defendants in their answer that was filed on October 22, 2010.

Currently pending before the Court is Lorillard's motion for summary judgment that was filed on April 15, 2011. On July 19, 2011, the Court received a "document" which was purportedly filed on behalf of all of the Defendants as their opposition response to Lorillard's dispositive motion. However, it should be noted that this "document" neither comports with the procedural requirements of the Local Rules of this Court nor was accompanied by an appropriate explanation for the Defendants' collective failure to file an answer in a timely manner. Inasmuch as this "document" was filed well beyond the twenty-one day time limitation which is required by E.D. Mich. L. R. 7.1(e)(1)(B), the Court (1) will strike it from the record and (2) will not consider its content when seeking to make an evaluation of the merits, if any, of Lorillard's currently pending dispositive motion. Therefore, the Clerk of the Court is directed to remove this "document," (i.e., Docket Entry No. 31) from the official record.

I.

The Lorillard Tobacco Company is a Delaware corporation that owns the NEWPORT brand of cigarettes which are distributed to various wholesalers and retailers for sale throughout the country. (Pl.'s Compl. ¶ 6 at 3). According to the complaint, the NEWPORT trademark has been exclusively advertised, marketed, and distributed by Lorillard and its affiliated entities since 1956. *Id.* ¶¶ 12, 20. The record establishes that Lorillard and its affiliates hold federal registrations for the following marks: NEWPORT® (stylized), Spinnaker Design®, Design Only®, LORILLARD®, Lorillard® (stylized), Newport Box with Striations®, Newport Menthol Box®, and NEWPORT®. *Id.*

The Defendants in this matter are four Michigan-based retailers, all of whom are accused of selling counterfeit products that bear Lorillard's federally registered trademarks within the Eastern

2

District of Michigan.

On September 30, 2010, a sales representative for Lorillard, Mark Edenfield, while visiting a retail location of Zoom Enterprises, Inc. ("Zoom") for a routine inventory check, uncovered nine packages of Newport Box 80's cigarettes that facially appeared to be counterfeit. (Pl.'s Mot. for Summ J. at 4; *see also* Edenfield Decl. Ex. 3 at ¶ 4). After inspecting the nine packages, Edenfield exchanged the two packages of suspected counterfeit cigarettes and replaced them with genuine NEWPORT cigarettes. *Id*. Thereafter, he forwarded the suspected counterfeit cigarettes to Edward O'Brien, one of Lorillard's managers in sales planning, for an inspection. (Edenfield Decl. Ex. 3 at ¶ 5).

At a later time on the same date, Edenfield traveled to a retail location of Speedy Enterprise Corporation ("Speedy") where he found one carton of suspected counterfeit Newport Box 80's cigarettes being offered for sale. *Id*. at ¶ 6. Edenfield followed the same procedure that he performed at the Zoom location, with the suspected counterfeit cigarettes being forwarded to O'Brien for his inspection and evaluation. *Id*. at ¶¶ 4-5. On October 1, 2010, O'Brien, after having received and inspected the Newport Box 80's cigarettes from the Zoom and Speedy retail locations, determined that all of the packages that had been forwarded to him by Edenfield were counterfeit products. *Id*. at ¶¶ 2, 7, 25.

At approximately 8:30 a.m. on the same date, another Lorillard sales representative, Anne Sterling, visited an Alou Fuels, Inc. retail location and found a Newport Box 80's container of cigarettes that she believed to be counterfeit. (Pl.'s Mot. Summ. J. at 5; *see also* Sterling Decl. Ex. 5 at ¶ 4). After exchanging the suspected counterfeit package of cigarettes for one genuine package of the same product, Sterling proceeded to her next stop at Alou Investment, Inc. where she found

three packages of suspected counterfeit Newport Box 80's cigarettes and two packages of suspected counterfeit Newport Box 100's. *Id*. at ¶ 6. Sterling thereafter followed the same procedure that Edenfield employed during his visit to the Zoom and Speedy locations by forwarding the suspected counterfeit cigarettes to O'Brien along with a request for a confirmation of her suspicions.

On October 4, 2010, O'Brien concluded that the transmitted cigarettes were counterfeit replicas of the NEWPORT brand. According to Lorillard, O'Brien based his conclusions on three key indicators that, in his opinion, distinguished the genuine NEWPORT cigarettes from its counterfeits; namely; (1) the clarity of the printing on the product; (2) the elasticity of the tear tape that accompanied the cellophane wrapping; and (3) the use of out-of-date product codes. *Id*. at ¶¶ 3-6. As noted in Lorillard's motion, O'Brien avers that the printing on the authentic NEWPORT cigarettes is typically not as sharp as that found on the counterfeit packages. *Id.* Moreover and unlike that found on the counterfeit products, the cellophane tear-tape on the authentic NEWPORT cigarettes has no elasticity at all. *Id.* Finally, the product codes (imprinted on the bottom of the "seized" packages of cigarettes) are all previously confirmed counterfeit codes. *Id.*

On October 13, 2010, acting upon the grant of Lorillard's request for an ex parte seizure order, the U.S. Marshals executed seizures of the suspected counterfeit products (Pl.'s Mot. Summ. J at 6). An additional seven packages of counterfeit Newport Box 80's cigarettes and one additional pack of counterfeit Newport Box 100 cigarettes were retrieved from Zoom's retail store location. *Id*.

## II.

Pursuant to Fed. R. Civ. P. 56©, a summary judgment may be granted in those cases where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©.  The central purpose of this rule "is to isolate and dispose of factually unsupportable claims or defenses …." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). At this stage, "[t]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  In so doing, the district court must view the evidence in a light that is most favorable to the non-moving party. *60 Ivy Street Corp. v. Alexander*, 822 F.3d 1432, 1435 (6th Cir. 1987).

An issue is "genuine" if it contains evidence upon which a jury could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248.  The burden of proof rests upon the moving party to affirmatively demonstrate the absence of all genuine issues of a material fact in the record. *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).  Any plain assertions by the moving party that the non-moving party is without evidence will not suffice.  *Celotex Corp*, 477 U.S. at 332. Satisfaction of this burden may be accomplished in either of two ways; namely, (1) the submission of affirmative evidence that negates an essential element of the non-moving party's claim or (2) a demonstration to the Court that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *Id*. at 331.  This burden may be discharged by a "'showing'- that is, pointing out to the district court - that there is an absence of evidence to support the non-moving party's case." *Id*. at 325.  Once the moving party  discharges its burden, the burden then shifts to the non-moving party to present specific facts which show a triable issue. *Gregg*, 801 F.2d at 861.

In order to establish a genuine issue of a material fact, the non-moving party must go

5

beyond a mere reference to its pleadings. *Celotex Corp*, 477 U.S. at 324. The non-moving party is, therefore, required to produce "evidence of evidentiary quality" to show that a material fact does indeed exist. *Bailey v. Floyd Count Bd. Of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997). The proffered evidence must be such that would be sufficient to require its submission to a jury to resolve the disputed fact. *U.S. v. Sixty Thousand Dollars in U.S. Currency*, 763 F.Supp 909, 913 (E.D. Mich 1991). The raising of "some doubt as to the existence of a fact" is not enough. *Id.* If the evidence put forth by the non-moving party is "merely colorable, or is not significantly probative," a summary judgment for the movant may be granted. *Anderson*, 477 U.S. at 249-50.

III.

Lorillard's complaint alleges that the Defendants are liable under six theories, each of which will be considered *seriatim.*

A. Trademark Counterfeiting & Infringement (Count I)

In order for Lorillard to prevail on a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1114(1), it must demonstrate a likelihood of confusion. *K'Arsan Corp. v. Christian Dior Perfumes, Inc.*, 166 F.3d 1214, 2 (6th Cir. 1998). The Sixth Circuit weighs the following eight factors in making determinations as to whether an alleged infringement posits a likelihood of confusion; to wit, (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Restaurant v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).

The Court notes that a plaintiff does not have to establish each enumerated factor in order to

prevail on this claim. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). These enumerated factors merely serve as a guide to assist a court in determining whether a likelihood of confusion would result from use of the marks at issue in this case. *Id.* at 1187. The plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful. *Id.*

(1) <u>Strength of the Plaintiff's Mark</u>

Lorillard's trademarks are strong. In making reference to the strength of its NEWPORT trademark, Lorillard relies upon the language from *Comerica, Inc. v. Fifth Third Bankcorp*, 282 F.Supp.2d 557 (E.D. Mich 2003) where the court noted that "[a] mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of a wide and intensive advertisement, or because of a combination of both." *Id.* at 569. In *Comerica,* the court also recognized that marks are generally classified in categories of relatively increasing distinctiveness, which range from generic, descriptive, or suggestive to arbitrary and fanciful. *Id.* Those marks which reflect a common descriptive name are deemed to be generic. *Id.* Descriptive marks describe the quality or characteristics of a product or service, and generally cannot be a protected trademark unless they have acquired a secondary meaning. *Id.* The latter three categories (i.e., suggestive, arbitrary and fanciful) are deemed to be stronger, inasmuch as (1) the suggestive marks communicate something about the product without describing it, (2) the arbitrary marks have no prior connection with the type of products with which they are being used, and (3) the fanciful marks combine existing words to form new ones. Id.

Here, there is no doubt that Lorillard's NEWPORT trademark is strong, inasmuch as there is

evidence to suggest that it is neither generic, descriptive nor suggestive. There is nothing about the word NEWPORT that would inherently suggest an affiliation with the tobacco product industry. Moreover, the Defendants have not presented any evidence with which to challenge Lorillard's contention that its consumers have recognized and continue to purchase the brand since the 1950's, and in so doing, have made it one of the leading brands of menthol cigarettes in the United States. (Pl's. Br. Exh.1, ¶ 3). This view is supported by Lorillard''s possession of eight registered trademarks that are associated with the NEWPORT brand - a point that is not contested by the Defendants. Together, these facts illustrate the brand's unique and distinctive qualities which set it apart from other competing brands in the cigarette market. In fact, it would be unreasonable to assume that this level of brand recognition was somehow accomplished without the use of wide and intensive advertisements. Thus, the Court is persuaded that Lorillard has presented a sufficient amount of evidence to prove that NEWPORT is a hallmark brand of cigarettes. Accordingly, the Court finds that this factor weighs in Lorillard's favor.

(2) <u>Relatedness of the Goods</u>.

The goods at issue are related. Relatedness is considered "[t]he most important inquiry in the likelihood of confusion determination," *Comerica Inc.* 282 F.Supp.2d. at 570. Courts within the Sixth Circuit agree that relatedness is a factor that may arise in one of three possible scenarios; such as (1) cases in which the parties are in direct competition and confusion is likely if their marks are sufficiently similar; (2) cases in which services are somewhat related but not in direct competition; and (3) cases where services are totally unrelated and confusion is unlikely. *Golf Club, Inc. v. Champions Golf Club Inc.*, 78 F.3d 1111, 1118 (6th Cir. 1996).

Lorillard asserts that the trademarks that were used on the claimed counterfeit cigarettes are

not only related, but are identical. (Pl.'s Mot. Summ. J. at 10). Because the products at issue are cigarettes which have identical trademark insignia, are commingled in the same inventory, are offered at identical costs, and target the same consumers, there can be no doubt that the goods are likely to be perceived as originating from the same source. The Court finds that the genuine and non-genuine goods were identical and in direct competition. This factor, therefore, weighs in Lorillard's favor.

(3) <u>Similarity of the Marks</u>.

Although the differences are relatively infinitesimal, the trademarks are similar enough to cause confusion if presented individually. According to the Sixth Circuit in *Wynn Oil v. Thomas*, 839 F.2d 1183, 1187-1188 (6th Cir. 1988), the appropriate test of similarity is "whether the mark 'will be confusing when singly presented.'" Based on the declarations in Lorillard's motion, it appears that only a trained-eye can identify the subtle differences which distinguish a counterfeit NEWPORT product from a genuine one; to wit, (1) clarity in the printing; (2) elasticity of the cellophane tear tape; and (3) use of previous counterfeit product codes. Aside from these three factors, the trademarks imprinted on the non-genuine goods appear to be virtually identical. If presented individually, the non-genuine pack of NEWPORT cigarettes would likely confuse even the most avid purchaser. Thus, the Court finds that this factor weighs in Lorillard's favor.

(4) <u>Evidence of Actual Confusion</u>

Lorillard has presented evidence that is sufficient to support a potential of actual confusion. There is a consensus among the courts within this Circuit that evidence of actual confusion is "undoubtedly the best evidence of likelihood of confusion." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997). *See also Cosmetic Dermatology*

*and Vein Centers of Downriver, P.C. v. New Faces Skin Care Centers, Ltd.*, 91 F.Supp.2d 1045 (E.D. Mich. 2000) (marks comprised of words and symbols must be compared with their entireties); *Larco Brothers, Inc. v. Luca's Chophouse, LLC.*, 621 F.Supp.2d 466, 473 (E.D. Mich. 2008); *Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir. 1996). Furthermore, this factor should be "weighted heavily *only* when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available." *Golf Club, Inc.*, 78 F.3d at 1119. (emphasis added). In reference to this factor, Lorillard does not contend that it has produced any evidence of actual confusion. Rather, Lorillard attempts to substantiate its position by acknowledging that an absence of actual confusion is not dispositive. This Court agrees with Lorillard's position.

Due to the difficult nature of producing actual evidence of confusion, this factor is often discounted and deemed to be "insubstantial." *Id.* Thus, courts in this Circuit have held that an absence of evidence which speaks to actual confusion is not weighted heavily against a plaintiff's claim. *Id*. At most, the only evidence of actual confusion that can be extracted from Lorillard's complaint and motion are the declarations from its sales representatives, Edenfield and Sterling. According to facts in Lorillard's now-pending motion, it was its sales representatives' speculations (confusion) about a possible counterfeit product that led them to question the validity of the cigarettes that were being offered for sale.

The Sixth Circuit has made it clear that there is no requirement that evidence of actual confusion "must be confusion at the point of sale - purchaser confusion – and not the confusion of nonpurchas[ers]. . . ." *Id*. Moreover, a plaintiff who alleges a violation under the Lanham Act need only show a sufficient potential of confusion. *Daddy's Junky Music Store, Inc.*, 109 F.3d. at 285. For these reasons, the declarations from an aggrieved party are sufficient evidence to support a

10

potential of actual confusion. This evidence, along with the similarities in the marks and relatedness of the products, combine to increase the likelihood of confusion. Thus, the Court finds that this factor weighs in Lorillard's favor.

(5) Marketing Channels Used

In analyzing this factor, the Court is required to "[c]onsider the similarities or differences between the predominant customers of the parties' respective goods or services…a court must determine whether the marketing approaches employed by each party resemble each other." *Larco Brothers, Inc.*, 621 F.Supp.2d at 473. A further analysis of this factor requires a consideration by the court of "how and to whom the respective goods or service of the parties are sold." *Homeowners Group v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1110 (6th Cir. 1991). In this case, both parties have targeted their products toward the same consumers (i.e., cigarette purchasers) and marketed it through the use of retail store locations. Undeniably, the inventories of the non-genuine and the authentic goods are virtually indistinguishable, especially when they are placed side-by-side, and the fact that they are offered for essentially identical prices would present a likelihood of confusion among its consumers. Thus, the Court finds that this factor weighs in favor of Lorillard.

(6) Likely Degree of Purchaser Care

As noted by the court in *Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc.*, 471 F.Supp.2d 822, 829-830 (E.D. Mich. 2007), the degree of purchaser care is similar to the standard of a typical buyer who exercises ordinary caution. A higher standard is appropriate only when the purchaser has the requisite expertise or when the services provided are expensive or unusual. *Id. See also Homeowners Group*, 931 F.2d at 1111. Typically, cigarette purchasers, in utilizing "a low degree of care" do not possess the level of sophistication to identify the subtle differences between two

11

packages that are virtually indistinguishable, as is the case here. *Id.* At the point of purchase, there would be no clear reason for a typical buyer to believe that he/she is purchasing a non-genuine product. Thus, the Court finds that this factor weighs in Lorillard's favor.

(7) Defendants' Intent in Selecting the Mark

Regarding this element, Lorillard alleges that the Defendants sold counterfeit cigarettes with "a desire to exploit [the] marks and mislead consumers about the source of their origin." (Pl.'s Mot. for Summ. J. at 12-13). The Sixth Circuit in *Homeowners Group* established that if "a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners Group*, 931 F.2d at 1111. A finding of intent may also be supported if a defendant uses a contested mark with the knowledge that the product is protected or, as the result of its extensive advertising and long-term use of a protected mark, creates the presumption that the alleged infringer knew that it was protected. *Daddy's Junky Music Store, Inc.*, 109 F.3d at 286. However, a defendant's intent in selecting the mark is "considered only in the sense that its existence can 'strengthen[ ] the likelihood of confusion.'" *Lorillard Tobacco Company v. Van Dyke Liquor Market, Inc.*, 471 F.Supp.2d 822, 828 (E.D. Mich 2007) (modification in original). A showing of intent is not required. *Id. See also Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir. 1996) ("[d]efendant's… intentions do not in any way preclude a finding of likely confusion. . . . [A]bsent ... a showing [of intentional infringement], intentions are irrelevant."). Significantly, the intent factor alone will not extinguish a finding of likely confusion. *Golf Club, Inc.*, 78 F.3d at 1121. With this in mind, the Court concludes that this factor does not weigh in either party's favor.

(8) Likelihood of Expansion of the Product Lines

The record does not indicate that either party has expressed an interest in expanding its product lines.  Therefore, this factor is neither relevant nor weigh in either party's favor.

(9) <u>Balancing the Factors</u>

In balancing the above-listed eight factors, the Court finds that - as a matter of law - a likelihood of consumer confusion does exist.  The Defendants' inventories contained a mixture of genuine and non-genuine NEWPORT brand cigarettes that were virtually indistinguishable and simultaneously offered for sale to the same consumers.  Moreover, they have failed to provide any evidence to dispute the likelihood that their consumers would be confused by the counterfeit NEWPORT brand cigarettes in their respective inventories.

In reviewing the record and accepting the facts in a light that is most favorable to the Defendants, the Court finds that Lorillard is entitled to a summary judgment on its trademark counterfeiting and infringement claim pursuant to 15 U.S.C. § 1114(1)(a).

B. <u>Unfair Competition, False Designation, Descriptions and Representations</u> (Count II)

In support of this claim, Lorillard relies on section 1125(a) of the Lanham Act which imposes civil liability against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…

13

15 U.S.C. § 1125(a). In order to establish a claim for false designation of origin, Lorillard must demonstrate that (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion. *Lorillard Tobacco Company*, 471 F.Supp.2d at 831. The Court will refrain from evaluating the likelihood of confusion issue because the eight factors, to which reference has been made above, when weighed under 15 U.S.C. § 1114(1)(a) are identical to those that are applied to the false designation issues under 15 U.S.C. § 1125(a). *Id.* Therefore, all that remains is for the Court to determine if Lorillard has demonstrated that "[t]he false designation had a substantial economic effect on interstate commerce." *Id.* To that end, the Court finds that, inasmuch as the Defendants' counterfeit products compete directly with Lorillard's authentic brand, there is no reason to doubt that the fraudulent sales have, and will continue to have, a significant impact on interstate commerce. Accordingly, Lorillard is entitled to the entry of a summary judgment on its claim for false designation of origin.

C. <u>Trademark Dilution</u> (Count III)

The Lanham Act prohibits unfair competition that is accomplished through the dilution of famous trademarks. In order to prevail on a claim of federal dilution, a plaintiff must show that (1) the senior mark is famous, (2) the senior mark is distinctive, (3) the junior mark qualifies as a "commercial" use in commerce, (4) the junior mark begins after the senior mark has become famous, and (5) the junior mark caused a dilution of the distinctive quality of the senior mark. *Audi AG v. D'Amato*, 469 F.3d 534, 546 (6th Cir. 2006).

Here, the record is undisputed that (1) Lorillard's NEWPORT mark is famous and distinctive, and (2) the brand achieved its status prior to the date of the complained-of-violations by the Defendants. Furthermore, the Defendants' use of the mark occurred in commerce, inasmuch as

14

the claimed counterfeit cigarettes were being sold to consumers at one or more of the Defendants' retail establishments.  The only remaining question, then, is whether there is evidence of the mark's dilution.  With regard to this issue, the Supreme Court has opined that direct evidence of such dilution may not be necessary to the extent that it can be inferred in cases like this one, where the junior and senior marks are identical.  *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 434 (2003). Inasmuch as the record establishes that the Defendants sold cigarettes which bore trademarks that are identical to Lorillard's registered brand, the Court finds that there is sufficient evidence to establish the last element of the dilution analysis.  Noting that the presence of the counterfeit versions of Lorillard's mark diminishes the ability of an ordinary consumer to identify and distinguish the legitimate goods from fraudulent ones, the entry of a summary judgment against the Defendants on the issue of trademark dilution is appropriate.

D.  <u>State Law Claims</u> (Counts IV, V, and VI)

The Sixth Circuit has noted that the test for relief under Michigan common law for unfair competition (Count IV) is identical to the test under the Lanham Act which centers on the "likelihood of confusion" standard.  *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831 (6th Cir. 1983).  The same is true for claims of unfair competition under the Michigan Consumer Protection Act (Count V) and Mich. Comp. Laws § 429.42(a).  *Wilcom Pty. Ltd v. Endless Visions,* 128 F. Supp.2d 1027, 1033 (E.D. Mich. 1998).

Since Lorillard has established that there is no genuine issue of a material fact relating to the question of the likelihood of consumer confusion, Lorillard's  request for the entry of a summary judgment in connection with its state law claims of unfair competition must be, and is, granted.

E. <u>Wilfulness of the Defendants' Conduct and Relationship to Statutory Damages</u>

The Lanham Act permits a trademark owner to elect - at any time before a final judgment is rendered - to recover an award of statutory damages (as opposed to seeking actual damages and lost profits) for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. *See* 15 U.S.C. § 1117(c).  The amount of a prospective damages award may be "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or, in the case of a willful violation, be increased to not more than $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed.  *Id.*  Courts in this District have noted that in civil cases such as this one, "willful conduct denotes intentional, knowing and voluntary acts . . . . [and] may also indicate a reckless disregard for obvious or known risks." *Lorillard Tobacco Company v. Van Dyke Liquor Market, Inc.*, 471 F. Supp. 2d 822 (E.D. Mich. 2007).

Here, Lorillard asks the Court to infer a finding of willfulness which is based on the Defendants' refusal to answer questions about the scope of their knowledge and intent, based allegedly on their Fifth Amendment privilege against self-incrimination.  While the Defendants' attempt to assert a privilege under the Fifth Amendment as it relates to their respective business interests may be questionable, particularly in light of their failure to appoint an agent who could respond without any fear of self-incrimination, *Braswell v. United States*, 487 U.S. 99, 105 (1988) and *U.S. v. Kordel*, 397 U.S. 1, 8 (1970), the Court is not persuaded that a negative inference of willfulness should necessarily follow.  In the judgment of this Court, a potential ten-fold increase in the scope of damages to be levied against the Defendants is unwarranted in the absence of a clear

16

indication that they or their representatives knew - or had good reason to know - that the cigarettes were counterfeit, or sold them with reckless disregard as to the legitimacy of the product. Inasmuch as Lorillard has not established that it is entitled to relief on this question as a matter of law, its request for the entry of a summary judgment on the question of wilfulness must be, and is, denied.

IV.

Therefore, for the reasons that have been stated above, Lorillard's request for the entry of a summary judgment is granted in part and denied in part. Lorillard's motion is granted as it is related to the question of liability on all of its substantive counts. However, Lorillard's motion which seeks to obtain a declaration that the Defendants acted wilfully with regard to enhanced statutory damages is denied.

IT IS SO ORDERED.

Dated: August 18, 2011           s/Julian Abele Cook, Jr.
Detroit, Michigan          JULIAN ABELE COOK, JR.
         United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 18, 2011 .

         s/ Kay Doaks
         Case Manager